IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| RUSSELL H. POTTS, JR., and, <br> RUSS POTTS FOR GOVERNOR ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNIVERSITY OF VIRGINIA CENTER FOR POLITICS ) <br> and ) <br> LARRY J. SABATO, PH.D., ) <br> in his official capacity, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br> 3:05CV00050 <br><br><br><br> ORDER AND OPINION <br><br><br><br><br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the Plaintiffs' Motion for a Temporary Restraining Order or a Preliminary Injunction, heard before the Court on October 7, 2005. For the following reasons, Plaintiffs' Motion is DENIED.

Plaintiff is an independent candidate for governor. He seeks a preliminary injunction baring the occurrence without his participation of a televised gubernatorial debate scheduled for Sunday, October 9. As organizers of the debate, Defendants require that to participate, a candidate must garner at least 15 percent support in two public opinion polls conducted before the October 6 deadline. Plaintiff failed to receive such support, and thus was denied participation in the debate. He seeks an injunction allowing him to participate.

In evaluating a request for a preliminary injunction, the Court applies the four-part test used in *Blackwelder Furniture Company v. Seilig Manufacturing Co.* The court must balance: (1) the likelihood of irreparable harm to the plaintiff if the injunction is not granted;

(2) the likelihood of harm to the defendant if the injunction is denied; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. 550 F.2d 189, 195-96 (4th Cir. 1977); *Direx Israel Ltd v. Breakthrough Medical Corp*, 952 F.2d 802, 812 (4th Cir. 1992).

The Fourth Circuit applies this test by initially balancing the harm to the plaintiff and the harm to the defendant and determining the weight given to the third factor according to the outcome of this initial step. *Direx Israel*, 952 F.2d at 808. If a "decided balance" of hardship emerges favoring the plaintiff, then the plaintiff need only raise questions on the merits so "serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Id.* (citing *Blackwelder*, 550 F.2d at 195). On the other hand, if there is no significant imbalance of hardships between the plaintiff and defendant, then the plaintiff must show a clear likelihood of success on the merits to prevail in his motion. *Id.* (citations omitted). With those standards before it, the Court now turns to the merits of this Motion.

With regard to the first prong of the *Blackwelder* test, the Court finds that the Plaintiff has shown that he will suffer irreparable harm if he is not allowed to participate in this debate. In oral argument, both sides noted that this is the only televised debate of the gubernatorial race. It is clear that a television appearance, side by side with the candidates of the main political parties, would boost Plaintiff's credibility and give him an opportunity to convey his message and publicly confront his opponents that he would not otherwise possess. In addition, this debate is scheduled to occur less than a month before the election, at a time when competition among the candidates is fiercest and this debate could have an impact on

the outcome of the election.

With regard to the second prong of the *Blackwelder* test, the Court finds that Defendant has shown it will suffer harm as well, although not to the significant degree that Plaintiff will suffer. Defendant has argued that granting the injunction in this case will infringe on its academic freedom and First Amendment rights. It is true that superceding the Defendant's judgment as to the candidates to be included in the debate will jeopardize its independence and might damage its pedagogical role. A court should tread carefully in attempting to override independent academic decisions. These harms to Defendant, while significant, do not rise to the level of the harm Plaintiff would suffer if he were barred from participation in the debate, however.

With regard to the fourth prong of the *Blackwelder* test, the Court finds that both parties have valid claims on the public interest, but that the issue ultimately favors the Plaintiff. Although he is running as an independent candidate, Mr. Potts is by no means a marginalized candidate, and his presence adds interest to the gubernatorial race. Plaintiff cites a poll stating that 58 percent of Virginia's voters favor including him in the debate. At the same time, however, the public also has a legitimate interest in not opening the floodgates of future gubernatorial debates to all contenders who can argue they enjoy a modicum of support. Because this concern is largely speculative at this point, however, the public interest slightly favors the plaintiff.

Both parties have focused their attention on the third prong of the *Blackwelder* test, however, and it is to that factor that the Court now turns. The Court finds that the Plaintiff has essentially no likelihood of prevailing on the merits of his case. In order to consider the

merits of this case, the Court must first apply forum analysis to determine the level of review to apply to Mr. Potts' exclusion. Neither party has argued that the debate is a traditional public forum such as a public park or a sidewalk, nor does the case law support any such contention. *See Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 673 (1998); *Columbia Broad. Sys. v. Democratic Nat'l Comm.*, 412 U.S. 94, 105 (1973).

The salient issue, rather, is whether the debate is a nonpublic forum, and thus Defendant's decisions are subject to scrutiny under the reasonableness test, or whether it is a designated public forum, and thus Defendant's decisions may be subject to a higher standard. Defendant argues that the debate is a nonpublic forum because it will be conducted in a television studio and thus is not available to the public generally. This argument construes the forum analysis too narrowly, however. The debate may take place in a television studio, but the issue in this motion is not the question of admittance to the studio; it is the question of admittance to the debate.

A nonpublic forum is one not open to public communication by tradition or designation, where the government merely reserves access for a class of speakers, then makes individualized decisions as to who may use the forum. *Forbes*, 523 U.S. at 679; *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 46 (1983). Defendant stretches to argue that it has merely reserved access to a specific class of candidates who have at least 15 percent support in the polls. In fact, there is no evidence that Defendant makes or has made individualized decisions within the 15 percent standard. Its own briefs list the 15 percent criterion as the only hurdle a candidate must clear to participate in the debates. It is thus unlike the public broadcaster in *Forbes*, which reserved eligibility in its debate to candidates,

then made candidate-by-candidate determinations as to which eligible candidates would participate in the debate. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998) Hence, Defendant's argument that its televised debate is a nonpublic forum is unpersuasive.

In contrast, a designated public forum is one that the state has opened to the public for expressive activity. *Perry Educ. Ass'n*, 460 U.S. at 45. To create this type of forum, the government must intend to make it generally available to a class of speakers. *Forbes*, 523 U.S. at 678. Here, all evidence shows that gubernatorial candidates polling more than 15 percent support were eligible to participate in the debate. Defendant did not appear to make individualized decisions among candidates, but admitted all those who met this qualification. Thus, the debate was open to a class of speakers, albeit an exceptionally narrow one. Under this standard, the debate qualifies as a designated public forum.

Where a forum qualifies as a designated public forum, two distinct levels of scrutiny may apply: the internal standard, which applies where the government excludes a speaker who falls within the class admitted to the forum; and the external standard, which refers to the government's designation of the class for whose benefit the forum has been opened. *Goulart v. Meadows*, 345 F.3d 239, 250 (4th Cir. 2003). Any limitation on speech within the class admitted to a designated public forum is subject to strict scrutiny. *Id., Forbes*, 523 U.S. at 677. The internal standard does not apply in this case because Plaintiff does not fall within the class admitted to the designated public forum: he has not achieved 15 percent support in independent public polls.

Under the external standard, the government's designation of a class is subject only to

the standards governing restrictions in nonpublic forums; it must only be viewpoint neutral and reasonable in light of the objective purposes served by the forum. *Goulart*, 345 F.3d at 250. Here, the 15 percent standard is plainly viewpoint neutral. Plaintiff argues that the standard serves a viewpoint restriction by promoting the idea of Virginia politics as a closed system where only the major parties are welcome. This argument, made in passing, is not convincing. The 15 percent restriction is just that: a restriction based on the candidate's polling numbers. It in no way limits the participation of candidates based on their political views.

Similarly, the 15 percent standard is reasonable in light of the purposes served by the televised debate. In *Forbes*, the Court noted the importance of selective access to political debates. Although such selectivity may bar a large number of potential participants, it furthers First Amendment interests by encouraging the government to keep its property open "to some expressive activity in cases where, if faced with an all-or-nothing choice, it might not open the property at all."*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998). A similar rationale applies here. If Defendants' 15 percent criterium were overturned, its goal of building a politically informed and educated public would, paradoxically, be shaken. It would simply not be feasible for all candidates, or even all significant candidates, to participate in a one hour debate. In addition, the 15 percent restriction serves as a reasonable cut-off to limit participation to candidates who actually have the potential to win the election.[1] The 15 percent restriction is thus reasonable in light of

---

[1] As a practical matter, the Court notes that Plaintiff only polled six percent support (with a +/- 4 margin of error) in a September public opinion poll. Even if the standard were lowered to ten percent, Plaintiff would still not be entitled to participate in the debate.

the purpose of the televised debate. Hence, although the Court determines that the debate is a designated public forum rather than a nonpublic forum, it nonetheless finds that Plaintiff is most unlikely to succeed on the merits.

After evaluating the four prongs of the *Blackwelder* test, the Court determines the Plaintiff will suffer irreparable harm if the injunction is not granted; the Defendant will suffer some harm if the injunction is granted; the public interest favors both parties but weighs more heavily in favor of the Plaintiff; and the Plaintiff has essentially no likelihood of success on the merits. The Court finds that the weakness of Plaintiff's case on the merits and the existence of harm to both parties bars the granting of a preliminary injunction in this case.

Accordingly, the Court DENIES Plaintiff's Motion for a Temporary Restraining Order or a Preliminary Injunction.

It is so ORDERED.

The Clerk of Court hereby is directed to send a certified copy of this Order and Opinion to all counsel of record.

ENTERED: *[signature]*
United States District Judge

10/7/05
Date